**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: BENZOYL PEROXIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 3120 |

**DEFENDANTS' OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS
PURSUANT TO 28 U.S.C. § 1407[1]**

"[C]entralization under Section 1407 should be the last solution
after considered review of all other options."
*In re Coll. Athlete Comp. Antitrust Litig.*, 2024 U.S. Dist. LEXIS 66967, at *3 (J.P.M.L. 2024)

Movants have not brought any product liability actions against the defendants. There are no allegations of any consumer injuries. Instead, Movants seek to consolidate in a single multidistrict litigation separate putative class actions filed against about a dozen different companies who make, sell, and/or advertise over-the-counter acne medications with benzoyl peroxide ("BPO") that allegedly contain or degrade into benzene (the "Underlying Actions"). This Panel has previously refused to consolidate similar putative class actions asserting deceptive product labeling claims against multiple manufacturers that allege claims idiosyncratic to each manufacturer's products. It should do the same here.

The plaintiffs in the Underlying Actions allege that the products at issue are mislabeled because their labels do not inform consumers that their ingredients purportedly contain "unsafe" levels of benzene. The defendants expressly dispute these allegations. Indeed, the manufacturers'

---

[1] This opposition brief is submitted on behalf of Johnson & Johnson Consumer Inc., Alchemee LLC, Clinique Laboratories, LLC, Crown Laboratories, Inc., CVS Health Corporation, CVS Pharmacy, Inc., Genomma Lab USA, Inc., L'Oreal USA, Inc., Padagis LLC, Padagis Israel Pharmaceuticals Ltd., Padagis US LLC, Perrigo Company, PLC, RB Health (US) LLC, Target Corporation, Taro Pharmaceutical Industries Ltd., Taro Pharmaceuticals U.S.A., Inc., Walgreens Boots Alliance, Inc., and Walmart, Inc.

position is consistent with that of the U.S. Food & Drug Administration ("FDA"), which—aware that BPO can form benzene and of benzene's safety profile—has approved the use of topical BPO in acne medications as "safe and effective" without a benzene warning.

Industry-wide centralization is particularly inappropriate here because the defendants are competitors who have sourced, manufactured, marketed, packaged, labeled, advertised, and sold myriad different medications under different brands and product lines. *See In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375 (J.P.M.L. 2021) ("We have been cautious when considering industry-wide centralization."). These medications contain different active and inactive ingredients from different suppliers, are manufactured in different facilities, and are labeled and advertised differently. Centralizing all of the Underlying Actions before a single judge would have the opposite result envisioned by Section 1407: it would lead to substantial inefficiencies as a single court attempts to grapple with the unique, unrelated facts for each defendant, thereby delaying adjudication of the central merits issues. Movants' listing of some potential common legal and factual issues fails to meet their "heavy burden to show that the actions will share sufficient overlap that including them will promote the just and efficient conduct of the litigation." *In re Consumer Vehicle Driving Data Tracking Litig.*, 2024 U.S. Dist. LEXIS 102142, at *4 (J.P.M.L. June 7, 2024).

There is accordingly no need for this Panel to centralize all of the Underlying Actions into a single multidistrict industry-wide litigation. Indeed, the actions against each of the respective manufacturers and retailers can be litigated efficiently in a single court before a single judge for each defendant, which is preferable to establishing an industry-wide multidistrict litigation cluttered with different claims against various named and wholly unrelated defendants. And there are obvious "alternatives to centralization," such as intra-district consolidation and transfer of

cases under 28 U.S.C. § 1404 or the first-filed rule, that obviate the need for a multidistrict litigation—just as this Panel suspected. *See* ECF No. 3; *see In re Bank of Am. Fraudulent Acct. Litig.*, 2023 U.S. Dist. LEXIS 219567, at \*3 ("[T]ransfer under Section 1404 is preferable to Section 1407 centralization.") (quotation omitted).

Instead, the Panel should allow ongoing efforts at consolidation to proceed on a defendant-by-defendant basis. Nearly all of the Underlying Actions each name as a defendant a single manufacturer or retailer of acne medication. About half of the manufacturers and retailers here face only one lawsuit. Ten of the initial actions were filed by Movant's counsel in their home state of California—where not a single manufacturer or retailer in any Underlying Action is incorporated or headquartered. The rest have been filed in jurisdictions across the country. In the past few months, the defendants have initiated efforts, or expressed intent to initiate efforts, to transfer cases against them to a single location where the respective manufacturer or retailer is headquartered or the jurisdiction of the first-filed action against that defendant. In some jurisdictions, the Actions have been re-assigned to a single judge. The defendants generally expect to move the Underlying Actions into a single location for each defendant—whether by voluntary agreement with the plaintiffs or via motions to transfer.

## BACKGROUND

### I.     Summary of the Underlying Actions.

Multiple plaintiffs have filed putative class actions across the country against various manufacturers and retailers of acne medications containing the active ingredient benzoyl peroxide ("BPO"). BPO has been used for decades to treat acne. The roughly dozen defendants sell different BPO acne medications under distinct product lines. Each defendant sources active and inactive ingredients from different suppliers; manufactures its products using its own proprietary active

3

and inactive ingredient specifications and formulations; has distinct packaging, quality control, and supply chain processes; and labels, markets, and advertises its products differently. The acne medications have different levels of BPO, different modes of application (e.g., wash off, spot treatment, full face leave-on application), different inactive ingredients, different instructions, and different warnings.

Each of the Underlying Actions followed a March 5, 2024, FDA Citizen's Petition (the "Petition") by laboratory Valisure, LLC, finding benzene in BPO acne medications. www.valisure.com/valisure-newsroom/valisure-detects-benzene-in-benzoyl-peroxide.   Valisure issued a press release announcing the filing of its Petition the next day. *Id.* Valisure had previously reported finding benzene in other products (e.g., sunscreen) and filed similar petitions, each of which was immediately followed by class actions. Those prior petitions received criticism from both the FDA and courts, which have observed Valisure's shoddy research and cozy relationship with class action counsel.[2] In its Petition, Valisure reported that certain BPO acne medications contain benzene, including when heated to 122º F and 158º F for weeks on end. *Id.* The reported benzene concentrations varied significantly by both medication tested and heat exposure. *Id.* Each defendant expects to establish with evidence that actual benzene exposure, if any, from use of each defendant's particular BPO acne medication is less than both standard "no significant risk levels" and daily benzene exposure from everyday sources.

Within hours after Valisure issued its press release, Movants' counsel Wisner Baum filed class actions in California district courts against various manufacturers and retailers of BPO acne

---

[2] *See, e.g., In re Zantac Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1091-94 (S.D. Fl. 2022) (describing Valisure's flawed methodology of measuring a carcinogen in certain drugs, including by heating the drug products, and noting resulting FDA criticism); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 1591128, at *3 (S.D. Fla. May 19, 2022) (noting "evidence . . . that Valisure was coordinating its efforts with attorneys").

medication.[3] Other putative class actions were filed across the country resulting in cases pending in at least ten states. With few exceptions, each Underlying Action is brought against a single manufacturer or retailer and does not contain industrywide allegations. The plaintiffs in the Underlying Actions cite neither standards nor science to allege they faced any plausible risk of benzene exposure. They generally fail to allege the acne medications did not work as promised, when they purchased the medications, how they were used, and under what circumstances they were stored. Nor do they claim to have suffered any adverse health issue from use of the medications. Rather, these lawsuits are putative class actions that assert a variety of false advertising, breach of warranty, and consumer fraud claims on behalf of one or more putative classes of consumers against a single manufacturer or retailer. They challenge the labeling of myriad acne medications sold under many different product lines and manufactured by several different companies.

The Underlying Actions contain allegations that (1) specific label statements on the respective defendant's products were misleading because of the presence (or material risk of the presence) of benzene and (2) the respective defendant failed to disclose the presence (or the material risk of the presence) of benzene in each of their products. The plaintiffs allege that they suffered economic harm because they would not have purchased the specific BPO products had they known about the presence (or material risk of presence) of benzene. The defendants dispute these allegations, deny that the respective labeling of each one of their products is deceptive in any

---

[3] Wisner Baum has previously filed putative class actions based on Valisure citizen petitions. *See, e.g.*, *Hansen v. Boehringer Ingelheim Pharm., Inc.*, No. 19-984 (E.D. Cal.) (lawsuit concerning the antihistamine and antacid drug Zantac and based on Valisure citizen petition). The firm also represents Valisure in a pending lawsuit. *See Valisure LLC v. GlaxoSmithKline PLC*, No. 19-4239 (E.D. Pa.).

way, and disagree that their products contain (or have a material risk of containing) the levels of benzene alleged in the respective complaints.

While some defendants have been sued in multiple lawsuits, many defendants face only one lawsuit. As explained below, the defendants facing multiple lawsuits have initiated (or plan to initiate) efforts to consolidate their cases into a single location, generally corresponding to their home district or the location of a first-filed case against that defendant. Each defendant reasonably anticipates that all cases filed against it will be consolidated in a single jurisdiction, whether by voluntary cooperation or motions to transfer under § 1404 or the first-filed rule.

## II.     The Plaintiffs Represented by Wisner Baum Seek a Multidistrict Litigation.

On May 22, 2024, the plaintiffs in eleven Underlying Actions filed by firm Wisner Baum filed a motion before this Panel seeking to consolidate all of the Underlying Actions against any defendant (or combination of defendants) into a single multidistrict proceeding in the Northern, Central, or Eastern District of California. ECF No. 1. In an effort to highlight the purported similarity of the Underlying Actions, Movants lump all of the defendants together and contend that the Underlying Actions are all false advertising lawsuits brought on behalf of putative classes of consumers.[4] ECF No. 1-1 ("Mem.") at 1.

On May 24, 2024, the Panel set a briefing schedule on the motion, which it later modified after granting defendants' unopposed request for an extension. *See* ECF Nos. 4, 7. The Panel directed the parties to "address what steps they have taken to pursue alternatives to centralization," such as "informal coordination" and "seeking Section 1404 transfers of one or more of the subject

---

[4] For example, Movants contend that the cases arise "from Defendants' false and misleading advertisement of BPO Products without telling consumers the BPO Products degrade to benzene exposing them to harm." Mem. at 1.

cases." ECF No. 4. Those "alternatives to centralization" eliminate the need for a multidistrict litigation here.

## ARGUMENT

**I.     This Panel Should Decline to Consolidate the Underlying Actions Against Competing Defendants into a Single Industry-Wide Multidistrict Litigation.**

This Panel has repeatedly emphasized that it is "typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured, and sold similar products." *In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378 (J.P.M.L. 2012); *see In re Consumer Vehicle Driving Data Tracking Litig.*, 2024 U.S. Dist. LEXIS 102142, at *4 (J.P.M.L. June 7, 2024) ("Proponents of an industry-wide MDL generally have a heavy burden to show that the actions will share sufficient overlap that including them will promote the just and efficient conduct of the litigation."); *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d 1375 (J.P.M.L. 2021) ("We have been cautious when considering industry-wide centralization."); *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (observing the Panel is "typically skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL").

Indeed, this Panel has recognized that "creating an industry-wide MDL" against competing defendants typically generates "few efficiencies," particularly where the "factual commonality across the actions appears to be superficial at best." *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (noting that, under these circumstances, "[c]reating an industry-wide MDL for . . . all defendants would seem to complicate pretrial proceedings more than it would streamline them"); *see In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 844 F. Supp. 2d at 1378 ("Given the relatively minimal number of common factual questions, the

potential for a multi-defendant MDL to introduce added complexity to this litigation, and the strong opposition of numerous plaintiffs and defendants, we are not persuaded that industry-wide centralization is appropriate."). For these reasons, "[p]roponents of an industry-wide MDL generally have a *heavy burden* to show that the actions will share sufficient overlap that including them will promote the just and efficient conduct of the litigation." *In re Consumer Vehicle Driving Data Tracking Litig.*, 2024 U.S. Dist. LEXIS 102142, at *4 (emphasis added).

Here, this motion presents a textbook example of why industry-wide consolidation is disfavored. The defendants in the Underlying Actions manufacture and sell myriad BPO acne medications under distinct product lines. Each manufacturer sources active and inactive ingredients from different suppliers; manufactures its products using its own proprietary active and inactive ingredient specifications and formulations; has distinct packaging, quality control, and supply chain processes; and labels, markets, and advertises its products differently. As a result, "the individual issues that result from the differences among each defendant's [products] with respect to product design, development, testing, . . . and marketing will predominate over the common issues." *In re Power Morcellator Prod. Liab. Litig.*, 140 F. Supp. 3d 1351, 1353-54 (J.P.M.L. 2015); *see also In re Consumer Vehicle Driving Data Tracking Litig.*, 2024 U.S. Dist. LEXIS 102142, at *4-5 ("The actions appear to involve unique factual issues concerning each automaker's design and implementation of technology for gathering driver data, its interactions and relationship with LexisNexis and/or Verisk, and its disclosures to drivers about data gathering and dissemination."); *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig.*, 544 F. Supp. 3d at 1376-77 ("[E]ach defendant manufactures, markets, and distributes its own baby food products subject to different manufacturing processes, suppliers, and quality control procedures. The claims against each defendant thus are likely to rise or fall on facts specific to that defendant . . . ."); *In re*

*Watson Fentanyl Patch Prod. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) ("Each group of cases against each manufacturer will involve unique product- and defendant-specific issues (such as the different product designs, manufacturing processes, regulatory histories, and company documents and witnesses) that will overwhelm the few common issues . . . .").

There are accordingly no meaningful efficiencies to be gained from consolidating the claims against each defendant—which will necessitate different discovery, motion practice, and pretrial proceedings—into a single MDL. If anything, an industry-wide MDL will simply inject additional case management hurdles, such as the need to protect the confidential trade secret information of each defendant and the need to establish separate tracks for each defendant, that would be unnecessary if the cases were to proceed separately in consolidated actions against each individual defendant. *See, e.g.*, *In re CP4 Fuel Pump Mktg., Sales Pracs. & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (emphasizing that "centralizing competing defendants in the same MDL . . . would complicate case management" due to "the need to protect trade secret and confidential information" and "the possible need for separate discovery and motion tracks").

Moreover, the fact that the Underlying Actions overwhelmingly consist of false advertising lawsuits makes a multi-defendant MDL even more inappropriate, as false advertising claims—by their nature—are inherently unsuited to multi-defendant proceedings. It is not just the defendants who realize this fact. To the contrary, most of the plaintiffs in the Underlying Actions have recognized that their claims are most appropriately brought as single-defendant lawsuits. These plaintiffs have filed separate lawsuits against different manufacturers and retailers. Indeed, several plaintiffs—including Movants—have themselves filed separate suits against each manufacturer. Furthermore, many defendants are named only in a single Underlying Action. Industry-wide

centralization would substantially increase the inconvenience to each. There is no reason for this Panel to lump those single-defendant lawsuits into an unwieldy industry-wide proceeding.

**II.**    **This Panel Should Decline to Consolidate the Underlying Actions, as There Are Alternatives to Centralization That Obviate the Need for a Multidistrict Litigation.**

In their Motion, the Movants suggest that the only alternative to a multidistrict litigation is for dozens of cases to proceed individually, resulting in duplicative discovery, conflicting rulings, and other purported inefficiencies. *See* Mem. at 14-15. But this is a false dichotomy, as it overlooks the fact that many defendants are involved in only one case and the remaining defendants are initiating efforts to consolidate their respective cases without the need for this Panel's intervention. These efforts include voluntary cooperation with plaintiffs' counsel, intra-district single judge assignments as related cases, motions to transfer pursuant to 28 U.S.C. § 1404, and motions to transfer to a "first-filed" jurisdiction. These are the precise "alternatives to centralization" that this Panel directed the parties to address, and illustrate that a multidistrict litigation is not necessary here. *See* ECF No. 3.

It is well-established that "centralization under Section 1407 should be the last solution after considered review of all other options." *In re Coll. Athlete Comp. Antitrust Litig.*, 2024 U.S. Dist. LEXIS 66967, at *3 (J.P.M.L. 2024); *In re Bank of Am. Fraudulent Acct. Litig.*, 2023 U.S. Dist. LEXIS 219567, at *3 (J.P.M.L. 2023); *In re Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). "In particular, [the Panel] repeatedly ha[s] noted that where a reasonable prospect exists that the resolution of a Section 1404 motion or motions could eliminate the multidistrict character of a litigation, transfer under Section 1404 is preferable to Section 1407 centralization." *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018); *see also In re Coll. Athlete Com. Antitrust*

*Litig.*, 2024 U.S. Dist. LEXIS 66967, at *2-3 (other options "include agreeing to proceed in a single forum via Section 1404 transfer of the cases"); *In re Bank of Am. Fraudulent Acct. Litig.*, 2023 U.S. Dist. LEXIS 219567, at *3 ("[T]ransfer under Section 1404 is preferable to Section 1407 centralization") (quotation omitted); *In re Gerber Probiotic Prod. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 (J.P.M.L. 2012) ("[T]ransfer under Section 1404 may moot the multidistrict character of a litigation and allow a consolidated proceeding in one court with jurisdiction over the pretrial, trial, and post-trial aspects of the litigation.").

Here, as in the cases above, there is no need for multidistrict consolidation for the defendants because they are already consolidating themselves:

Alchemee LLC, Taro Pharmaceuticals U.S.A., Inc., Taro Pharmaceutical Industries Ltd. There are six Underlying Actions pending against these defendants, comprising two in the Northern District of California and one each in the Central District of California, Western District of Missouri, Northern District of Illinois, and the Southern District of New York.[5] These defendants have already filed motions under § 1404 to transfer the actions in the Central District of California, the Western District of Missouri, and the Northern District of Illinois to the Southern District of New York, the jurisdiction of Alchemee LLC's principal place of business. The motion pending in the Western District of Missouri (*Heermann v. Alchemee, LLC*, No. 24-00195, ECF No. 22) will be fully briefed by June 26, 2024. The Northern District of California *sua sponte* stayed the two matters there, directing defendants to file their motion to transfer after this Panel renders its decision.

---

[5] Plaintiffs' counsel in the Southern District of New York case, *Judt v. Alchemee LLC*, No. 24-2718 (S.D.N.Y.), filed a notice of voluntary dismissal without prejudice on June 20, 2024, the day before this filing.

Crown Laboratories, Inc. There are three cases pending against Crown, in the Northern District of California, Central District of California, and Western District of Missouri. Crown filed consent or unopposed motions to transfer the latter two cases to the Northern District of California under the first-filed rule. Crown's transfer motion in the Western District of Missouri, *Flores v. Crown Labs., Inc.*, No. 24-211, ECF No. 11, has been granted and that case is now pending in the Northern District of California before the Honorable Edward Chen—the same judge overseeing the other case against Crown already pending in the Northern District of California, *see Flores v. Crown Laboratories, Inc.*, No. 23-3591 (N.D. Cal.). Crown reasonably anticipates that, absent a multidistrict litigation, all of the Underlying Actions against it can be successfully consolidated in the Northern District of California.

Johnson & Johnson Consumer Inc. There are three cases pending against Johnson & Johnson Consumer Inc., in the Central District of California, the Northern District of Illinois, and the District of New Jersey, the jurisdiction of Johnson & Johnson Consumer Inc.'s principal place of business. Johnson & Johnson Consumer Inc. filed motions under § 1404 to transfer the cases in the Central District of California and Northern District of Illinois to the District of New Jersey. Johnson & Johnson Consumer Inc. reasonably anticipates that, absent a multidistrict litigation, all Underlying Actions against it will be successfully consolidated there.

L'Oreal USA, Inc. There are six cases pending against L'Oreal. Two are pending in the Southern District of New York, the jurisdiction of L'Oreal's principal place of business, and one each is pending in the Eastern District of Louisiana, the Northern District of Illinois, the Western District of Missouri, and the District of Hawai'i. The cases in the Southern District of New York, *Abednego v. L'Oreal USA, Inc.*, No. 24-3998, and *Noakes v. L'Oreal USA, Inc.*, No. 24-2735, have been related and assigned to a single judge, the Honorable Analisa Torres. L'Oreal intends to seek

transfer of all Underlying Actions against it, whether by voluntary transfer or § 1404 motion, to the Southern District of New York, the jurisdiction of its principal place of business. L'Oreal reasonably anticipates that, absent a multidistrict litigation, all of the Underlying Actions against it can be successfully consolidated there.

RB Health (US) LLC. There are three cases pending against RB Health, in the Central District of California, Western District of Missouri, and Northern District of Illinois.[6] RB Health has filed motions to transfer the actions against it in the Western District of Missouri and Northern District of Illinois to the Central District of California, under the first-filed rule. It anticipates that, absent a multidistrict litigation, all of the Underlying Actions against it can be successfully consolidated in the Central District of California.

Target Corporation. There are four cases pending against Target Corporation, two of which are pending in the District of Minnesota, the jurisdiction of Target's principal place of business. The other two cases are pending in the Eastern District of California and Northern District of Illinois. In *O'Dea v. Target Corp.*, No. 24-02763 (N.D. Ill.), the plaintiff filed a joint motion to stay proceedings pending the Panel's determination on May 29, 2024. Because the court had not ruled on the motion to stay, Target filed a motion to dismiss on May 30, 2024. On June 3, 2024, the court entered an order staying the case. The parties will file a status report with the court by August 5, 2024, regarding the status of the pending motion before the Panel.

In *Navarro v. Target Corp.*, No. 24-280 (E.D. Cal.), Target filed its motion to dismiss on May 30, 2024. On June 11, 2024, the court entered an order approving the parties' stipulation to stay the case pending resolution of the pending motion before the Panel.

---

[6] A fourth lawsuit involving Clearasil was filed against a non-existent entity. *See Nelson v. Rickitt Benckiser, LLC*, No. 24-60782-MD (S.D. Fla.).

Motions to dismiss have been filed by Target in the two cases pending in the District of Minnesota, styled as *Miller v. Target Corp.*, No. 24-1323 (D. Minn) and *Hill-Horse v. Target Corp.*, No. 24-2197 (D. Minn). Shortly after the motions were filed, the court stayed proceedings in both matters pending the Panel's decision on whether to consolidate the actions. *See Miller,* No. 24- 1323, ECF No. 28; *Hill-Horse*, No. 24- 2197, ECF No. 14. The parties are to file status reports within seven days of the Panel's decision if the matters are not transferred. *Id.*

Walgreens Boots Alliance, Inc. There are three cases pending against Walgreens Boots Alliance, Inc., two of which are pending in the Northern District of Illinois, the jurisdiction of Walgreens's principal place of business. The third case is pending in the Eastern District of California. Walgreens has filed motions to dismiss in each of the three cases. In *Bolyard v. Walgreens Boots Alliance, Inc.*, No. 24-3138 (N.D. Ill.), the plaintiff's deadline to respond to the motion to dismiss is July 1, 2024, and Walgreens's deadline to reply is July 15, 2024. The plaintiff filed an unopposed motion to stay pending this Panel's determination on June 11, 2024, which remains pending.

In *Bodunde v. Walgreens Boots Alliance, Inc.*, No. 24-2437 (N.D. Ill.), the plaintiff filed an unopposed motion to stay pending this Panel's determination on June 6, 2024. On June 10, 2024, the court entered an order staying the case and vacating the briefing schedule on Walgreens' motion to dismiss. The parties will file a status report with the court within seven days of the Panel's ruling or by August 2, 2024, whichever occurs first.

In *Navarro v. Walgreens Boots Alliance, Inc.*, No. 24-290 (E.D. Cal.), Walgreens filed its motion to dismiss on May 30, 2024. On June 11, 2024, the court entered an order approving the parties' stipulation to stay the case pending resolution of the pending motion before the Panel.

Walmart, Inc. There are four cases pending against Walmart (also erroneously sued as Walmart Stores, Inc.). The first-filed case, *Navarro v. Walmart, Inc.*, No. 24-288, is pending before the Honorable Jennifer Thurston in the Eastern District of California. The other three cases against Walmart are pending in the Northern District of Illinois, the Western District of Missouri, and the District of South Carolina. Walmart has begun the process of transferring all cases against it to the first-filed jurisdiction in the Eastern District of California. Walmart reasonably anticipates that, absent a multidistrict litigation, all of the Underlying Actions against Walmart can be successfully consolidated in the Eastern District of California and will proceed as a single case with common pleadings, motion practice, and discovery.

The remaining defendants are named only in a single Underlying Action: CVS Pharmacy, Inc., CVS Health Corporation, Clinique Laboratories, LLC, Genomma Lab USA, Inc., Padagis Israel Pharmaceuticals Limited, Padagis US LLC, Padagis, LLC, Perrigo Company PLC, and The Mentholatum Company, Inc.

As currently proceeding, the vast majority of these cases will go forward as consolidated proceedings against each defendant in a single district. The defendants are already in the process of transferring the cases, and any remaining or future cases would be subject to similar transfer. These "alternatives to centralization" are far superior to a single multidistrict litigation, particularly since establishing such a proceeding would require all or nearly all of the defendants to litigate outside their home districts.

## III.    If the Panel Grants the Motion, It Should Transfer to the Southern District of New York or the District of New Jersey.

Finally, in the unlikely event the Panel is inclined to centralize the Underlying Actions at all, it should consider doing so in the Southern District of New York or the District of New Jersey.

The Panel favors districts in which a majority of defendants have a presence and here the solid majority of the Underlying Actions (at least 21) name defendants in or near these districts: Alchemee/Taro (New York, 6 Actions); Clinique (New York, 1 action); CVS (Rhode Island, 1 action); Johnson & Johnson Consumer Inc. (New Jersey, 3 actions); L'Oreal USA (New York, 6 actions); RB Health (New Jersey, 4 actions); The Mentholatum Company (New York, 1 action). *See, e.g., In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, at 1376-77 (J.P.M.L. 2018) (transferring to district where the defendant with a significant alleged role in the lawsuits was headquartered, and where the majority of the other named defendants were headquartered); *In re Generic Drug Pricing Antitrust Litig.*, 227 F. Supp. 3d 1402, 1405 at (J.P.M.L. 2016) (transferring to the district where the majority of the defendants were either headquartered or had significant business operations in or near); *see generally* Manual for Complex Litigation (Fourth) §20.131 (2004) (factors in selecting transferee district include "the site of the occurrence of the common facts" and "where the cost and inconvenience will be minimized").

Further, both the Southern District of New York (where at least two of the Underlying Actions were filed and are currently pending) and the District of New Jersey (where at least one of the Underlying Actions was filed and is pending) have the necessary judicial resources and experience to manage a complex MDL, as the Panel has previously recognized. *See, e.g.*, *In re Kind LLC "All Natural" Litig.*, 118 F. Supp. 3d 1380, 1381 (J.P.M.L. 2015) (Southern District of New York); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prod. Liab. Litig.*, 220 F. Supp. 3d 1356 (J.P.M.L. 2016) (District of New Jersey). For these reasons, the Panel has transferred numerous MDLs to both districts. *See, e.g.*, *In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372 (J.P.M.L. 2022) (Southern District of New York); *In re*

16

*Treasury Secs. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360 (J.P.M.L. 2015) (same); *In re Zimmer Duron Hip Cup Prods. Liab. Litig.*, 717 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010) (District of New Jersey); *In re Tropicana Orange Juice Mktg. & Sales Pracs. Litig.*, 867 F. Supp. 2d 1341 (J.P.M.L. 2012) (same).

Movants seek centralization in the Northern, Central, or Eastern Districts of California on the false premise that this is "where the plurality of cases are pending and where the first cases were filed." Mem. at 2. In fact, the solid majority of cases are pending outside of California. And, the first cases were filed in California only because Movants' law firm, which represents Valisure in separate litigation, was able to file on the same day Valisure released its press release. Most of the named plaintiffs reside outside of California, and the plaintiffs seek to represent both nationwide classes and subclasses from across the country. Furthermore, most Underlying Actions name defendants located on the East Coast.

## **CONCLUSION**

For the foregoing reasons, this Panel should deny Movants' motion to transfer. If the Panel is inclined to grant the motion, it should transfer to the Southern District of New York or the District of New Jersey.

Respectfully submitted,

Dated:  June 21, 2024

ALCHEMEE LLC, TARO PHARMACEUTICALS U.S.A., INC., AND TARO PHARMACEUTICAL INDUSTRIES LTD.

*/s/ Paul E. Boehm* (with permission)

Paul E. Boehm
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
T:  202-434-5000
F:  202-434-5029
pboehm@wc.com

*Attorneys for Defendants*
*Alchemee LLC, Taro Pharmaceuticals U.S.A., Inc.,*
*and Taro Pharmaceutical Industries Ltd.*

Dated:  June 21, 2024

CROWN LABORATORIES, INC.

*/s/ Devora W. Allon* (with permission)

Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
T:  212-446-5967
F:  212-446-4900
Devora.allon@kirkland.com

*Attorneys for Defendant*
*Crown Laboratories, Inc.*

Dated:  June 21, 2024

CVS HEALTH CORPORATION AND CVS PHARMACY, INC.

*/s/ Ricky L. Shackelford* (with permission)
Ricky L. Shackelford
GREENBERG TRAURIG, LLP
1840 Century Park East
Suite 1900
Los Angeles, California 90067
T:  310-586-7700
F:  301-586-7800

shackelfordr@gtlaw.com

*Attorneys for Defendants*
*CVS Health Corporation and CVS Pharmacy, Inc.*

Dated:  June 21, 2024          GENOMMA LAB USA, INC.

*/s/ Ashley D. Bowman* (with permission)

Ashley D. Bowman
BIRD, MARELLA, RHOW, LICENBERG,
DROOKS & NESSIM, LLP
1875 Century Park East
23rd Floor
Los Angeles, California 90067
T:  310-201-2100
F: 310-201-2110
abowman@birdmarella.com

*Attorneys for Defendant*
*Genomma Lab USA, Inc.*

Dated:  June 21, 2024          JOHNSON & JOHNSON CONSUMER INC. AND
KENVUE INC.

*/s/ Angela C. Agrusa*

Angela C. Agrusa
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400, North Tower
Los Angeles, California 90067
T:  310-595-3000
F:  310-595-3300
angela.agrusa@us.dlapiper.com

*Attorneys for Defendants*
*Johnson & Johnson Consumer Inc. and Kenvue Inc.*

Dated:  June 21, 2024          L'OREAL USA, INC.

*/s/ Thomas B. Mayhew* (with permission)

Thomas B. Mayhew
FARELLA BRAUN + MARTEL
One Bush Street, Suite 900

San Francisco, CA 94104
T:  415-954-4400
F:  415-954-4480
tmayhew@fbm.com

*Attorneys for Defendant*
*L'Oreal USA, Inc.*

Dated:  June 21, 2024                THE MENTHOLATUM COMPANY, INC.

*/s/ Laura E. Kogan* (with permission)

Laura E. Kogan
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
127 Public Square
Suite 4900
Cleveland, Ohio 44114
T:  216-363-4500
F:  216-363-4588
lkogan@beneschlaw.com

*Attorneys for Defenant*
*The Mentholatum Company, Inc.*

Dated:  June 21, 2024                PADAGIS US LLC

*/s/ Richard M. Barnes* (with permission)

Richard M. Barnes
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street
20th Floor
Baltimore, Maryland 21202
T:  410-783-4004
F:  410-783-4040
RMB@GDLDLAW.COM

*Attorneys for Defendant*
*Padagis US LLC*

Dated:  June 21, 2024                RB HEALTH (US) LLC

/s/ Andrew Soukup (with permission)

Andrew Soukup

COVINGTON & BURLING LLP
850 Tenth Street Northwest
Washington, D.C. 20001
T:  202-662-5066
F:  202-662-6291
asoukup@cov.com

Attorneys for Defendant
RB Health (US) LLC

Dated:  June 21, 2024                    TARGET BRANDS AND TARGET
                                        CORPORATION

                                        */s/ Ricky L. Shackelford* (with permission)

                                        Ricky L. Shackelford
                                        GREENBERG TRAURIG, LLP
                                        1840 Century Park East
                                        Suite 1900
                                        Los Angeles, California 90067
                                        T:  310-586-7700
                                        F:  301-586-7800
                                        shackelfordr@gtlaw.com

                                        *Attorneys for Defendants*
                                        *Target Brands and Target Corporation*

Dated:  June 21, 2024                    WALGREENS BOOTS ALLIANCE, INC.

                                        */s/ Ricky L. Shackelford* (with permission)

                                        Ricky L. Shackelford
                                        GREENBERG TRAURIG, LLP
                                        1840 Century Park East
                                        Suite 1900
                                        Los Angeles, California 90067
                                        T:  310-586-7700
                                        F:  301-586-7800
                                        shackelfordr@gtlaw.com

                                        *Attorneys for Defendant*
                                        *Walgreens Boots Alliance, Inc.*

Dated:  June 21, 2024                    WALMART, INC. AND WAL-MART STORES,
                                        INC.

_/s/ Livia M. Kiser_ (with permission)

Livia M. Kiser
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, California 90071
T:  213-443-4355
F:  213-443-4310
lkiser@kslaw.com

_Attorneys for Defendants_
_Walmart, Inc. and Wal-Mart Stores, Inc._