UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: BENZOYL PEROXIDE MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION   MDL No. 3120

ORDER DENYING TRANSFER

**Before the Panel:**[*] Plaintiffs in eleven actions move under 28 U.S.C. § 1407 to centralize this litigation in the Northern District of California, the Central District of California, or the Eastern District of California. The litigation consists of 28 putative class actions pending in ten districts, as listed on Schedule A. The Panel has been notified of seven potentially-related actions pending in two additional districts. All responding plaintiffs support or do not oppose centralization, though they differ as to their preferred transferee district. Plaintiffs in five actions and one potentially related action request centralization in the Northern District of California. Plaintiffs in three actions suggest centralization in the Northern District of Illinois. Plaintiffs in three actions support centralization without proposing a specific transferee district. Plaintiffs in the District of South Carolina *Sanderlin* action and three potentially-related actions take no position on centralization and, if an MDL is created, suggest the Western District of Missouri or the Northern District of Illinois as the transferee district. All responding defendants[1] oppose centralization and variously suggest transfer to the Southern District of New York, the District of New Jersey, or any other district in New York in the event of centralization.

On the basis of the papers filed and the hearing session held, we conclude that Section 1407 centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of the litigation. These actions were brought shortly after testing laboratory Valisure filed a citizen petition with the U.S. Food and Drug Administration, stating that its testing had shown benzoyl peroxide in acne products degrades into benzene, a known human carcinogen, under certain conditions. Plaintiffs are purchasers of such acne products who allege that they would not have purchased the products had they known that their use posed a risk

---

[*] Judge Karen K. Caldwell did not participate in the decision of this matter. In addition, one or more Panel members who could be members of the putative classes in this litigation have renounced their participation in these classes and have participated in this decision.

[1] Johnson & Johnson Consumer Inc., Alchemee LLC, Crown Laboratories, Inc., CVS Health Corporation, CVS Pharmacy, Inc., Genomma Lab USA, Inc., L'Oréal USA, Inc., The Mentholatum Company, Padagis LLC, Padagis Israel Pharmaceuticals Ltd., Padagis US LLC, Perrigo Company, PLC, RB Health (US) LLC, Target Corporation, Taro Pharmaceutical Industries Ltd., Taro Pharmaceuticals U.S.A., Inc., Walgreens Boots Alliance, Inc., and Walmart, Inc.

- 2 -

of exposure to benzene. They assert claims for violation of state consumer protection laws, along with, variously, claims for breach of express or implied warranty, fraudulent or negligent misrepresentation, and unjust enrichment. The actions will present several common issues of fact—primarily whether benzoyl peroxide degrades into benzene, under what conditions, and, if it does create benzene, whether harmful levels of benzene are produced.

A number of considerations, though, weigh against centralization. All but one of the suits were brought against an individual defendant or group of related defendants and involve a single product line.[2] At least twelve different defendants or defendant groups are named in the 35 total actions, yet no defendant group was sued in more than six actions, and four defendants have been sued in only one action. Defendants' products vary with respect to their formulations, the quantity of benzoyl peroxide they contain, how the products are packaged and stored, and how they are labeled and marketed. Discovery as to any testing done by defendants also will be defendant-specific.

Despite these variations among the actions, plaintiffs seek creation of an industry-wide MDL. We have been cautious when considering such requests. *See, e.g., In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1346 (J.P.M.L. 2020) (observing that the Panel is "typically skeptical of requests to centralize claims filed against multiple defendants who are competitors in a single MDL because it often will not promote judicial efficiency or serve the convenience of the parties and witnesses"). Plaintiffs here do not allege an industry-wide conspiracy[3] or an indivisible physical injury caused by multiple defendants' products or conduct.[4] Nor is this a situation where all parties support centralization.[5] Plaintiffs argue that this litigation is comparable to that centralized in *In re Zantac (Ranitidine) Products Liability Litigation*, 437 F. Supp. 3d 1368 (J.P.M.L. 2020), as both followed on the heels of a Valisure citizen petition and involve products containing a common ingredient that allegedly degrades into a carcinogen. But

---

[2] Only the Western District of Missouri *Heermann* action names two defendant groups. Defendants in *Heermann* have moved to sever the claims against them and transfer them to separate jurisdictions.

[3] *Cf., e.g., In re Generic Digoxin & Doxycycline Antitrust Litig.*, 222 F. Supp. 3d 1341, 1344 (J.P.M.L. 2017) (centralizing actions against numerous generic pharmaceutical manufacturers involving different generic medicines where they concerned "similar alleged conspiracies involv[ing] overlapping defendants").

[4] *Cf. In re Hair Relaxer Mktg., Sales Pracs., & Prods. Liab. Litig.*, 655 F. Supp. 3d 1374, 1376-77 (J.P.M.L. 2023) (creating industry-wide MDL where "most of the actions name[d] multiple sets of defendants" and plaintiffs alleged personal injuries as a result of using "different product lines over the course of their lives").

[5] *Cf. In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*, 210 F. Supp. 3d 1375, 1377–78 (J.P.M.L. 2016) (centralizing false advertising cases against multiple retailers of grated Parmesan cheese where most plaintiffs and most defendants supported industry-wide centralization).

- 3 -

the Zantac litigation is readily distinguishable—virtually all parties supported centralization, some plaintiffs brought personal injury claims against multiple defendants, asserting indivisible injuries, and there were "significant overlaps among defendants in both the personal injury and consumer class actions." *Id.* at 1369.  In addition, the products at issue in *Zantac* did not involve widely varying product formulations, as these cases do.  Such variations here could result in an unwieldy MDL and require separate discovery tracks to safeguard the confidentiality of defendants' unique formulations.

We also note that defendants have made concerted efforts to organize the litigation on a defendant-specific basis by seeking to transfer claims against them to either their home jurisdictions or the jurisdictions in which the first-filed action is pending. Five of the seven defendants named in multiple actions and districts have moved to transfer, or given notice of their intention to do so, in eleven actions.  Two of those motions already have been granted.  In addition, in several jurisdictions, multiple actions have been related before a single judge.  We are inclined to allow these efforts to self-organize the litigation to play out.  "The Panel has often stated that centralization under Section 1407 'should be the last solution after considered review of all other options.'"  *In re Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.,* 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (citing *In re Best Buy Co., Inc., Cal. Song–Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L.2011)).  Creating defendant-specific "hubs" ultimately may prove the most efficient means of moving the litigation toward resolution.

It is therefore ORDERED that the motion for centralization of these actions is denied.

PANEL ON MULTIDISTRICT LITIGATION

———————————————————
Nathaniel M. Gorton
Acting Chair

Matthew F. Kennelly         David C. Norton
Roger T. Benitez               Dale A. Kimball
Madeline Cox Arleo

**IN RE: BENZOYL PEROXIDE MARKETING, SALES
PRACTICES AND PRODUCTS LIABILITY LITIGATION**    MDL No. 3120

## SCHEDULE A

Central District of California

HOWARD, ET AL. v. ALCHEMEE, LLC, ET AL., C.A. No. 2:24−01834
MONTENEGRO v. CVS PHARMACY, INC., ET AL., C.A. No. 2:24−01876
MONTENEGRO, ET AL. v. RB HEALTH US LLC, ET AL., C.A. No. 2:24−01878
MONTENEGRO, ET AL. v. JOHNSON AND JOHNSON CONSUMER, INC.,
    C.A. No. 2:24−01895

Eastern District of California

NAVARRO v. TARGET CORPORATION, C.A. No. 1:24−00280
NAVARRO, ET AL. v. WALMART, INC., C.A. No. 1:24−00288
HARRIS v. GENOMMA LAB USA, INC., C.A. No. 1:24−00289
NAVARRO, ET AL. v. WALGREENS BOOTS ALLIANCE, INC., C.A. No.
    1:24−00290

Northern District of California

GARCIA, ET AL. v. CROWN LABORATORIES, INC., C.A. No. 3:24−01448
DAUGHERTY, ET AL. v. PADAGIS ISRAEL PHARMACEUTICALS LIMITED,
    ET AL., C.A. No. 3:24−02066
FLORES, ET AL. v. CROWN LABORATORIES, INC., C.A. No. 3:24−03591
DEL TORO, ET AL. v. CROWN LABORATORIES, INC., C.A. No. 3:24−03996
TERON v. ALCHEMEE, LLC, ET AL., C.A. No. 5:24−01918
RAMOS, ET AL. v. ALCHEMEE, LLC, C.A. No. 5:24−02230

District of Hawaii

SNOW v. L'OREAL USA, INC., ET AL., C.A. No. 1:24−00110

Northern District of Illinois

WILLIAMS v. WALMART, INC., C.A. No. 1:24−02173
VISHNOI v. JOHNSON & JOHNSON CONSUMER, INC., C.A. No. 1:24−02193
O'DEA v. ALCHEMEE, LLC, ET AL., C.A. No. 1:24−02755
O'DEA v. L'OREAL, USA, C.A. No. 1:24−02762
O'DEA v. TARGET CORPORATION, C.A. No. 1:24−02763
BOLYARD v. WALGREENS BOOTS ALLIANCE, INC., C.A. No. 1:24−03138

-A2

Eastern District of Louisiana

GROSSENBACHER v. L'OREAL USA, INC., C.A. No. 2:24−00663

District of Minnesota

MILLER, ET AL. v. TARGET CORPORATION, C.A. No. 0:24−01323

Western District of Missouri

EMERY, ET AL. v. WAL-MART STORES, INC., C.A. No. 3:24−05019
HEERMANN, ET AL. v. ALCHEMME, LLC, ET AL., C.A. No. 4:24−00195
PAINTER, ET AL. v. L'OREAL USA, INC., C.A. No. 6:24−03077

Southern District of New York

NOAKES v. L'OREAL U.S.A., INC., C.A. No. 1:24−02735

District of South Carolina

SANDERLIN v. WALMART, INC., C.A. No. 4:24−01656